IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL PAUL HARBST, | § | |
| PETITIONER, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:08-CV-573-A |
| NATHANIEL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL INSTITUTIONS | § | |
| DIVISION, | § | |
| RESPONDENT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.     NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

B.     PARTIES

Petitioner Michael Paul Harbst, TDCJ-ID #1241437, is confined by the Texas Department of Criminal Justice, Correctional Institutions Division, in the Robertson Unit in Abilene, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

C.    HISTORY

Harbst was indicted in Tarrant County, Texas, in Cause #0861747A, for the murder of Curtis Epperly in the course of committing or attempting to commit robbery. (Clerk's R. 2). Evidence was introduced at trial that Harbst and Epperly attended a barbecue at a mobile home park in Kennedale on the evening of September 20, 2002, and during the party, Harbst told two women that he was going to beat up Epperly and rob him. (3 Rep. R. 101-05, 134-35). Harbst, Epperly, and two other men left to purchase more beer, but Harbst and the other men returned without Epperly and changed their clothes before re-joining the party. (3 Rep. R. 207, 210-11). Harbst later asked a friend to dispose of bloody clothing that was in Harbst's residence, and over the next few days, Harbst admitted to several people that he had beaten, shot, and killed Epperly. (3 Rep. R. 61, 74-75, 89, 126, 142-43, 147, 215; 4 Rep. R. 61-63). On September 25, 2002, Epperly's body was found about a mile from the mobile home park. (3 Rep. R. 263, 267). The investigating officer noted that the pockets of Epperly's pants had been turned out, which suggested that he had been robbed. (3 Rep. 271-72). The cause of death was a gunshot wound to the chest. (3 Rep. R. 44).

A jury found Harbst guilty of capital murder. (Clerk's R. 101). The State waived the death penalty, and Harbst was sentenced to life imprisonment. (Clerk's R. 104). Harbst's conviction and sentence were affirmed on direct appeal, and the Texas Court of Criminal Appeals refused his petition for discretionary review. *Harbst v. State*, No. 2-04-252-CR (Tex. App.–Fort Worth Oct. 27, 2005, pet. ref'd). Harbst also filed a state application for writ of habeas corpus, which was denied without written order on the findings of the trial court without a hearing. *Ex parte Harbst*, No. 69,460-01 (Tex. Crim. App. Mar. 19, 2008). Harbst filed his federal petition for writ of habeas corpus on March 31, 2008.

D.    ISSUES

Harbst alleges the following as grounds for issuance of the writ:

1.       He was denied the effective assistance of counsel because defense attorney failed to:

      a.     retain an expert witness;
      b.     effectively cross-examine the investigating officer;
      c.     impeach key prosecution witnesses;
      d.     call Harbst's co-defendants as witnesses;
      e.     allow Harbst to testify;
      f..     investigate or effectively cross-examine witnesses who testified that Harbst made inculpatory statements to them; and
      g.     interview or call Harbst's mother, family members, and friends as witnesses.

2.       The State withheld favorable evidence from the defense.

3.       He is actually and procedurally innocent.

## E.     RULE 5 STATEMENT

Respondent agrees that Petitioner has exhausted his state court remedies.

## F.     LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Lindh v. Murphy*, 521 U.S. 320 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362 (2000). Relief is also available if the state

court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. *See* 28 U.S.C. § 2254(d)(1)-(2); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere disagreement with the state court is not enough—the standard is one of objective reasonableness. *Id.* In addition, state court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006).

G.    DISCUSSION

1.    Ineffective Assistance of Counsel

Harbst contends that he was denied his Sixth Amendment right to counsel because of defense counsel's deficient performance in preparing for and defending the case at trial.  The state habeas court considered and rejected Harbst's complaints of ineffective assistance of trial counsel.  (State Habeas R.  238-45).

The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).  The first prong  requires the defendant to show that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. at 687, 104 S.Ct. at 2064.  The second prong requires the defendant to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id*. at 694, 104 S.Ct. at 2068.  The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one.  *Id*. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d 674. In addition,

-4-

claims of ineffective assistance are mixed questions of law and fact. *Id*. at 698, 104 S.Ct. at 2070. Because the state court has denied relief on this claim, the federal court cannot grant habeas relief unless the state court's decision involved an unreasonable application of the law to the facts. 28 U.S.C. § 2254(d)(1).

Harbst contends that counsel was ineffective because he failed to obtain the assistance of an expert witness to determine if a knife that was found on one of Harbst's co-defendants could have caused some of Epperly's injuries. Harbst has not attempted to support his argument with an affidavit from an expert or otherwise demonstrated what testimony might be anticipated. Moreover, defense counsel Michael Heiskell submitted an affidavit during the state habeas proceedings in which he explained that he had reviewed the discovery materials, including the autopsy report, and determined that an expert was unnecessary. (State Habeas R. 200). The state habeas court found Heiskell's decision was a valid choice given that Epperly died from a gunshot wound. (State Habeas R. 239). Harbst has not demonstrated that Heiskell's decision not to retain a knife expert was anything other than a reasonable strategic choice, nor can he demonstrate a reasonable probability of a different outcome given that the murder weapon was not a knife.[1]

Harbst also complains that counsel conducted an inadequate cross-examination of the investigating police officer, J.D. Sidebottom. Harbst complains that counsel should have questioned Sidebottom about his investigation reports, which contained contradictory information and some information that pointed to Harbst's co-defendants as the perpetrators. Among the evidence that Harbst wanted developed on cross-examination was information that Epperly had cashed his

---

[1] The medical examiner testified that Epperly had numerous non-fatal lacerations and injuries caused by an unknown blunt object and opined that the knife had not played a significant role in Epperly's injuries or death. (3 Rep. R. 36, 41, 56-58).

paycheck and was carrying approximately $300 on the day he was murdered and that Harbst's co-defendants spent $300 on drugs just two days after the murder; that Sidebottom received a tip that Epperly's body was buried near some railroad tracks; and that the police had coerced Jeremy Irons and his wife Amy Gallagher into giving statements that Harbst had asked them to dispose of bloody clothes that were in his trailer.  The state habeas court rejected Harbst's complaint.  (State Habeas R. 240, 244-45).

Harbst has not demonstrated that Heiskell's failure to delve into matters in Sidebottom's investigative reports reflects anything other than a reasonable strategic choice.  Harbst also demonstrates no prejudice as a result of Heiskell's alleged ineffectiveness when questioning the officer.  During cross-examination, Heiskell was able to elicit testimony from Sidebottom that no physical evidence was found that linked Harbst to the murder, while bloody clothing and other evidence was seized from Harbst's co-defendants.  (4 Rep. R. 5-26).  With respect to the amount of money taken from Epperly, Epperly's pay stub was found near his body and was disclosed to the jury.  Prosecution witness Lori West testified that Harbst told her that he intended to rob Epperly because he was carrying $300, and Harbst later admitted participating in the murder, including telling a co-worker that he had robbed and shot Epperly and received $20 as his share of the money.  (3 Rep. R. 103-04, 216).  Harbst also does not explain why Heiskell should have cross-examined Sidebottom about some inaccurate information the police received about the location and burial of the body when there was no dispute about the actual location of the body.  (State Habeas R. 120). The state habeas court further found that Heiskell investigated the possibility that the police coerced Irons and Gallagher, but found no support for this theory and therefore did not attempt to present such evidence at trial.  (State Habeas R. 239, 240).   Harbst has not demonstrated that the state

habeas court unreasonably applied clearly established federal law to the facts of his case in finding that counsel's cross-examination of Sidebottom was effective and there existed no reasonable likelihood of a different outcome if counsel had conducted the cross-examination that Harbst wanted.

In a related complaint, Harbst contends that counsel was ineffective in failing to impeach Irons and Gallagher, who testified that Harbst had contacted them after he was arrested and asked them to dispose of bloody clothes that were in his trailer.  Irons also testified that he went to Harbst's trailer, bagged up the clothes, and put the bag in the trash.  (4 Rep. R.63).  Harbst asserts that the police arrested Gallagher on an unrelated assault charge and threatened Irons and Gallagher that they would lose custody of their children unless they provided statements against Harbst.  In addition, Harbst asserts that Irons had a previous juvenile conviction for a drive-by shooting that could have been used to impeach his credibility.

Heiskell investigated the possibility of police coercion, but found no evidence that Irons or Gallagher had been forced to give false statements and declined to present this unsubstantiated theory at trial.  (State Habeas R. 200).  The state habeas court had Harbst's evidence to the contrary before it, but apparently found Heiskell's affidavit more credible.  (State Habeas R. 239-40).  As for Irons' criminal history, the jury knew that Irons had been given immunity for his role in disposing of Harbst's clothes.  (4 Rep. R. 53-54, 79-82, 88).  Heiskell decided that presenting evidence of a prior conviction would be harmful because it associated Harbst with characters of ill repute, and the state court accepted that explanation. (State Habeas R. 200).

Moreover, the state habeas court found no reasonable probability of a different outcome.[2]

_____

[2] The state court also expressed doubt about the admissibility of a juvenile criminal record.  *See infra* note 3 (addressing materiality prong of Harbst's argument that the prosecutor suppressed Iron's criminal history).

(State Habeas R. 241).  The state habeas court relied on evidence that Harbst had announced his intention to beat and rob Epperly; Harbst had financial problems; Harbst had an injured hand the day after Epperly's murder and made incriminating remarks to Gallagher when she helped bandage his hand; Harbst was seen with a gun after the murder and announced his intention to get rid of it; Harbst told a friend that he had beaten "the kid" so badly that his teeth went through his chin, admitted to shooting Epperly, and later bragged that there was a possibility he could avoid conviction; Harbst told virtually everyone at his workplace a consistent story about the police coming to arrest him because he had killed a man; and physical evidence matched Harbst's statements, including evidence that Epperly had been beaten so severely that several of his teeth were knocked out, the fatal injury was a gunshot wound to the chest, the gun used in the murder was the same type owned by the brother of Harbst's co-defendants, and shell casings at the scene matched those known to have been fired from that gun.  (State Habeas R. 241-42).  Harbst has not rebutted the state habeas court's underlying findings of fact with clear and convincing evidence, and he has not demonstrated that the state court acted unreasonably in rejecting his complaints about Heiskell's cross-examination of Irons and Gallagher.

Harbst complains of counsel's failure to interview his co-defendants and call them as witnesses.  The state habeas court rejected his complaint, finding that the co-defendants were represented by counsel who would not have allowed their clients to waive their Fifth Amendment privilege. (State Habeas R. 201, 240).  Harbst has produced no evidence that his co-defendants were available and willing to testify or that their testimony would have been favorable for the defense. *See  Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)(requiring petitioner show that witness would have testified and testimony would have been favorable). *See also Coble v. Quarterman*, 496

F.3d 430, 436 (5th Cir. 2007)(noting that complaints of uncalled witnesses are not favored in federal habeas review). Harbst has not demonstrated that counsel rendered constitutionally ineffective assistance in failing to interview or obtain testimony from his co-defendants.

Harbst further contends that counsel was ineffective in not allowing him to testify. The state court found that Harbst consistently indicated to defense counsel both before and during trial that he did not want to testify. (State Habeas R. 240). Harbst also invoked his Fifth Amendment privilege on the record during trial, although he has decided in hindsight that it would have been beneficial to testify. (4 Rep. R. 97). Moreover, Harbst again cannot demonstrate prejudice. The state habeas court found that evidence of Harbst's guilt, which included his numerous admissions to friends and co-workers that he had beaten, robbed and shot Epperly, undercut any reasonable likelihood of a different outcome but for counsel's allegedly ineffective representation. (State Habeas R. 241-42).

Harbst also complains that Heiskell did not interview or effectively cross-examine two of the State's witnesses, David Baxter and Angel Vargas, who testified that they worked with Harbst and that he had confessed to them that he had robbed and shot Epperly. (3 Rep. R. 74-77, 88-90). Harbst alleges that Baxter and Vargas were coerced by the police to give their statements, and that Vargas had a misdemeanor criminal record that was not disclosed to the jury. The state habeas court found that Heiskell investigated the possibility of police coercion, but was unable to substantiate the claim that any witnesses had been force to give false statements. (State Habeas R. 239). Harbst has not produced clear and convincing evidence to contradict the state court's factual findings on the issue of coercion. Harbst further fails to demonstrate prejudice as he has not established a reasonable probability of a different outcome had defense counsel conducted a  more thorough

investigation or cross-examination of Baxter or Vargas.  Harbst made similar confessions or incriminating statements to several people, not just his co-workers, and the circumstances of Epperly's death were consistent with the details Harbst provided about the murder.  (State Habeas R. 241-42).

Harbst also contends that counsel should have called his mother, Judith Harbst, as an impeachment witness because she had talked to Baxter and he told her that he knew of no reason that Harbst could not return to work if he was released on bond pending his trial, but that the ultimate decision would have to be made by the plant manager.  The state habeas court found that Harbst's mother was not a fact witness to the murder or robbery and that she had no credible personal knowledge to offer during the guilt-innocence phase.  (State Habeas R. 240).  Harbst has not provided clear and convincing evidence to rebut the state habeas court's factual determinations, and he has not demonstrated that counsel's decision not to call Judith Harbst as a witness during the guilt-innocence phase was anything other than a reasonable strategic choice.  *See Coble*, 496 F.3d at 436 (noting that presentation of testimonial evidence is largely a matter of trial strategy).  Moreover, there is no reasonable probability of a different outcome but for counsel's failure to call Harbst's mother as a witness to recount her conversation with Baxter.

Harbst contends that counsel was ineffective in not interviewing and calling numerous other family and friends to testify about his good character and reputation and Jeremy Irons' reputation as a troublemaker.  The state habeas court  found that Heiskell had not called witnesses to prove up Harbst's good character because the State waived the death penalty and an automatic life sentence was imposed; therefore, no punishment hearing was held at which the witnesses might have testified.  (State Habeas R. 240).  *See generally* TEX. PENAL CODE ANN. § 12.31(a) (Vernon  2003 & Supp.

2008).  And as already discussed, even if Heiskell should have made further efforts to impeach

Irons' credibility, no prejudice has been show in light of the evidence of Harbst's guilt.

Harbst is not entitled to habeas relief on his claims of ineffective assistance of trial counsel.

2.       Exculpatory Evidence

Harbst complains that the State suppressed information about prosecution witness Jeremy

Irons' criminal history.  If the prosecution suppresses evidence favorable to an accused, this violates

due process where the evidence is material to either guilt or punishment, irrespective of the good

faith of the prosecution.  *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d

215 (1963).  The prosecution's duty to disclose extends to impeachment evidence as well as

exculpatory evidence.  *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165

L.Ed.2d 269 (2006). To state a claim, the defendant must demonstrate that (1) the prosecution

suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to guilt or

punishment, and (4) the defendant's late discovery of the allegedly favorable evidence was not the

result of a lack of due diligence.  *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).

Harbst contends that Irons had a juvenile conviction for a drive-by shooting in New York

that was not disclosed to the defense.  The prosecution is deemed to have knowledge of information

that is readily available to it.  *Williams v. Whitley*, 940 F.2d 132, 133 (5th Cir. 1991).  The state

habeas court found that the prosecutor knew that both Harbst and Irons had left New York to avoid

legal trouble, but the prosecutor had no details about the nature of that trouble and had disclosed to

defense counsel what he knew about why Harbst and Irons came to Texas.  (State Habeas R. 249).

The state habeas court further found that the prosecution performed a criminal background check

on Irons, but nothing showed up in his criminal history, and as a general rule, out-of-state juvenile

records would not be found in such a search. (State Habeas R. 249). The state habeas court noted that the only evidence indicating that Irons might have a juvenile criminal conviction in another state consisted of a newspaper clipping and the recollection of a relative, which demonstrated the obscurity of the information and that it was no more accessible to the prosecution than the defense. (State Habeas R. 249-50). *Cf. East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995)(finding no *Brady* violation with respect to witness's mental health records because those records were not the type that is more readily accessible to the prosecution). The state habeas court determined that the State had not withheld Irons' juvenile history because the information was not available to them or law enforcement personnel who were working the case in Texas. (State Habeas R. 250, 252-53). *See Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995)(noting that prosecutor's obligation extends to favorable evidence known to others acting on government's behalf).

Moreover, the state habeas court found that Harbst did not satisfy the materiality prong to establish a *Brady* violation. (State Habeas R. 253). Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *Kyles*, 514 U.S. at 433-34, 115 S.Ct. at 1566; *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Reversal is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Kyles*, 514 U.S. at 435, 115 S.Ct. at 1566.

In finding that Irons' undisclosed and unknown juvenile conviction was immaterial, the state habeas court relied on the same evidence of Harbst's guilt that demonstrated that none of Harbst's

claims of ineffective assistance of counsel could satisfy the prejudice prong of *Strickland*.[3]  (State

Habeas R. 250-51).  The Fifth Circuit recognizes that the standard for materiality under *Brady* is

identical to the standard for prejudice under *Strickland*.  *Johnson v. Scott*, 68 F.3d 106, 109-10 (5th

Cir.1995).  Thus, the state court properly determined that relief for Harbst's complaint of a *Brady*

violation must be denied for the same reasons that Harbst's complaints of ineffective assistance of

counsel were unsuccessful.  The state court's rejection of Harbst's allegation that the prosecution

withheld favorable evidence was not an unreasonable application of clearly established federal law.

    3.     Innocence

    Harbst contends that his petition should be granted because he is actually and procedurally

innocent of capital murder.  He asserts that he has newly discovered evidence in the form of Irons'

juvenile criminal history, and also contends that he has demonstrated that he is innocent as a

procedural matter because of counsel's ineffective assistance and prosecutor misconduct.

    A claim of actual innocence, standing alone, is not cognizable on federal habeas review.

*Foster v. Quarterman*, 466 F.3d 359, 367 (5th 2006)*; Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th

Cir.2000).  *See generally Herrera v. Collins,* 506 U.S. 390, 416, 113 S.Ct. 853, 122 L.Ed.2d 203

(1993)*.*  Instead, claims of actual innocence, when proven, permit a federal court to examine the

merits of other independent habeas claims that would not be reviewable otherwise because of

---

[3] The state habeas court also noted that a youthful offender adjudication is not treated as a conviction under New York law, which calls into doubt its usefulness to the defense even if the conviction had been discovered and disclosed before trial.  (State Habeas R. 253).  *See generally* N.Y. CRIM. PROC. LAW § 720.35 (McKinney 1995) (noting that youthful offender adjudication does not invoke disabilities that usually follow a criminal conviction); *People v. Cook*, 338 N.E.2d 619 (N.Y. 1975)(holding that youthful offender adjudication cannot be utilized to impeach the credibility of the offender as a witness at a subsequent trial).  Similarly, Texas evidentiary rules generally do not allow a witness to be impeached with juvenile adjudications.  TEX. R. EVID. 609(d).

procedural infirmities.[4]  *See Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 861, 130 L.Ed.2d 808

(1995); *Dowthitt,* 230 F.3d at 741.  Moreover, even if there were a freestanding claim of actual

innocence, the threshold for such a claim would be "extraordinarily high."  *House v. Bell*, 547 U.S.

518, 555, 126 S.Ct. 2064, 2086-87, 165 L.Ed.2d 1 (2006).  Given the record as a whole, Harbst is

unable to make such a showing.  And for reasons already discussed, his arguments of a Sixth

Amendment violation or prosecutor misconduct are meritless.  Harbst is not entitled to relief based

on his claims of actual or procedural innocence.

H.       EVIDENTIARY HEARING

Harbst requests an evidentiary hearing to obtain testimony from his trial counsel and the

district attorney who prosecuted the case.  There are statutory prerequisites for holding an

evidentiary hearing on a state prisoner's petition for habeas corpus relief:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that--
>
> (A) the claim relies on–
>> (i) a new rule of constitutional law, made retroactive to cases on
>> collateral review by the Supreme Court, that was previously
>> unavailable; or
>> (ii) a factual predicate that could not have been previously discovered
>> through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder would
> have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  *See also Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 1488, 146

L.Ed.2d 435 (2000).  But Section 2254(e)(2) is not operative unless the failure to develop the factual

basis of a claim is due to a lack of diligence, or some greater fault, attributable to the prisoner or the

---

[4]  Harbst has not procedurally defaulted any of the points raised in his petition; therefore, this exception
does not apply.

prisoner's counsel.  *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th 2007).  Harbst developed or attempted to develop the factual basis for each of his claims by submitting numerous documents and affidavits in support of his state habeas application.  Even so, the district court has discretion in deciding whether an evidentiary hearing is warranted.  *See Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000).

In this case, the district court has before it sufficient facts to make an informed decision of the merits of each of Harbst's claims.  *Id.* at 816.  Both trial counsel and the prosecutor provided affidavits that were used in the state habeas proceedings, and those affidavits are included in the state court records that have been submitted by Respondent.  (State Habeas R. 200, 235).  Moreover, Harbst has not identified any factual dispute that, if resolved in his favor, would entitle him to relief. When the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.[5]  *Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007).  Harbst's arguments can be resolved by referring to the state court record and would not be advanced by holding a hearing.

## RECOMMENDATION

The petition for writ of habeas corpus should be denied.  The request for an evidentiary hearing should be denied.

---

[5] Harbst also contends that deference to the state court's findings of fact is not appropriate because the state court merely adopted the findings of fact and conclusions of law proposed by the State; however,  a full and fair state court hearing is not a precondition to affording a presumption of correctness to the state court findings of fact or applying the deferential standards of review prescribed by Section 2254(d).  *Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001).

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 24, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 24, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

-16-

the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby

is returned to the docket of the United States District Judge.

SIGNED JUNE 3, 2009.


_____/s/   Charles Bleil_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE